# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Celestine Dantzler, | : | CIVIL NO.: 1:20-cv-01261-SES |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. Introduction.

This is a social security action brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The plaintiff, Celestine L. Dantzler ("Dantzler"), seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits under Titles II and XVI of the Social Security Act.

---

[1] Kiolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find that the Commissioner's final decision does not sufficiently articulate the way the administrative law judge evaluated evidence in this case. We, therefore, cannot determine if the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be remanded so that the administrative law judge can more clearly explain how he arrived at his findings.

## II.  Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 20-1* to *20-52*.[2]  On May 3, 2013, Dantzler protectively applied[3] for a period of disability and disability insurance benefits, alleging that she has been disabled since December 1, 2012. *Admin. Tr.* at 17.  On May 21, 2013, Dantzler also applied for supplemental

---

[2] The facts of the case are well known to the parties and will not be repeated here. Instead, we will recite only those facts that bear on Dantzler's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-CV-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

security income, alleging disability since December 1, 2012. *Id*.   After the Commissioner denied the claim at the initial level of administrative review, Dantzler requested an administrative hearing, which was held before Administrative Law Judge Richard Zack ("ALJ Zack") on November 14, 2014. *Id*.

On March 16, 2015, ALJ Zack determined that Dantzler has not been disabled since December 1, 2012, the alleged date of disability, and so he denied her benefits. *Id*. at 29.   Dantzler appealed the ALJ's decision to the Appeals Council, which denied her request for review on August 19, 2016, *id*. at 1, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this court.

Dantzler filed a complaint in this Court on October 16, 2016. *Doc. 1* at 2.   On October 28, 2019, this Court reversed the Commissioner's 2016 decision and remanded Dantzler's case "for further consideration of Plaintiff's mental health impairments and related matters." *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *1 (M.D. Pa. Oct. 28, 2019).   In particular, this Court "found that the ALJ's rationale for rejecting an examining mental health source's opinion was 'fatally terse' and [that ALJ Zack] did not properly analyze mental health evidence." *Id.* at *1-2 (internal citations omitted); *see also Dantzler v. Berryhill*, No. 3:16-cv-2107, 2018 WL 9917678, at *6 (M.D. Pa. July 16, 2018), *report and recommendation adopted*, 2019 WL 5569466 (M.D. Pa. Oct. 28, 2019).

While Dantzler's case was pending in this Court, Dantzler filed another application for Social Security disability benefits and requested another hearing related to that application. *Admin. Tr.* at 971. The remanded case and the new case were consolidated. *Id.*

On March 10, 2020, Dantzler appeared and testified at another administrative hearing, which was held before Administrative Law Judge Jarrod Tranguch ("ALJ Tranguch"). *Admin. Tr.* at 971, 983.  On April 22, 2020, ALJ Tranguch determined that Dantzler was not disabled from December 1, 2012, the alleged date of disability, to November 10, 2017. *Id.* at 983.  ALJ Tranguch determined that Dantzler's last insured date was September 30, 2013, so he denied her benefits under Title II and denied her benefits under Title XVI prior to November 11, 2017. *Id.*  ALJ Tranguch found Dantzler disabled "by direct application of Medical-Vocational Rule 202.06" beginning November 11, 2017. *Id.* at 982.

The Appeals Council did not review ALJ Tranguch's decision, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this court.

Dantzler filed her second and now pending complaint in this Court on July 22, 2020. *Doc. 1* at 1.  Dantzler asks this Court to reverse the portion of ALJ Tranguch's decision which is adverse to her and to order an award of benefits or remand this case to the Commissioner. *Doc. 23* at 1-2.  The Commissioner filed an answer to the

complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs*. *19-20*.  The parties then filed briefs, *see docs*. *23*, *24, 25,* and this matter is ripe for decision.

## III.  Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).  But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.  Substantial evidence "means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by

the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Dantzler is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B. Initial Burdens of Proof, Persuasion, and Articulation.

To receive benefits under Title II and Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A); see also 20 C.F.R. §§ 404.1505(a) and 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental

impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a) and 416.905(a).

Additionally, to receive disability insurance benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).[4]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a) and 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience,

---

[4] "Disability insurance benefits are paid to an individual if that individual is disabled and 'insured,' that is, the individual has worked long enough and paid social security taxes." *Jury v. Colvin*, No. 3:12-CV-2002, 2014 WL 1028439, at *1 n.5 (M.D. Pa. Mar. 14, 2014) (citing 42 U.S.C. §§ 415(a), 416(i)(1)).  "The last date that an individual meets the requirements of being insured is commonly referred to as the 'date last insured.'" *Id*. (citing 42 U.S.C. § 416(i)(2)).  Here, ALJ Tranguch determined that Dantzler met the insured-status requirements through September 30, 2013. *Admin. Tr.* at 974.

and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v) and 416.920(a)(4)(i)–(v).

Between steps three and four, the ALJ must assess a claimant's RFC. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory

8

explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On April 22, 2020, ALJ Tranguch determined that Dantzler was not disabled from December 1, 2012, the alleged date of disability, to November 10, 2017. *Admin. Tr.* at 983. ALJ Tranguch determined that Dantzler's last insured date was September 30, 2013, so he denied her benefits under Title II and denied her benefits under Title XVI prior to November 11, 2017. *Id*. ALJ Tranguch found Dantzler disabled "by direct application of Medical-Vocational Rule 202.06" beginning November 11, 2017. *Id.* at 982.

ALJ Tranguch found that Dantzler had met the insured status requirements of the Social Security Act through September 30, 2013. *Id.* at 974. At step one of the sequential-evaluation process, ALJ Tranguch found that Dantzler had not engaged

in substantial gainful activity between December 1, 2012 (the alleged onset date) and April 22, 2020 (the date of the decision). *Id.*

At step two of the sequential-evaluation process, ALJ Tranguch found that Dantzler had the following severe impairments since the alleged onset date: degenerative disc disease of the lumbar spine, diabetes mellitus, obesity, bipolar disorder, anxiety disorder, post-traumatic stress disorder, alcohol use disorder, and marijuana use disorder.[5] *Admin. Tr.* at 974.

At step three of the sequential-evaluation process, ALJ Tranguch found that Dantzler did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 974. ALJ Tranguch discussed Listings 1.04, 9.00 et seq., 12.04, and 12.06, and determined that Dantzler did not meet any of those listings. *Id.* at 974-975. In connection with his discussion of listings 12.04 and 12.06, ALJ Tranguch concluded that Dantzler had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting

---

[5] Although ALJ Zack found that Dantzler also had the severe impairments of back and hip pain and hypertension, *Admin. Tr.* at 20, ALJ Tranguch did not find these same impairments to be severe, *Id.* at 974, and Dantzler did not raise this discrepancy on appeal. *Id.* Therefore, this Court will not review this discrepancy. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1157, 203 L. Ed. 2d 504 (2019) (specifically deciding only issues raised by the plaintiff).

and maintaining oneself. *Id*. at 974.   ALJ Tranguch also identified cocaine use disorder in sustained full remission as a medically determinable, non-severe impairment. *Id*.

Between steps three and four, ALJ Tranguch made the following RFC determination:

> After careful consideration of the entire record, the undersigned finds that since December 1, 2012, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could only occasionally push and/or pull with the lower extremities, such as operating pedals or foot controls.   She could occasionally balance, stoop, kneel, crouch, use ramps and climb stairs. The claimant must avoid crawling and climbing on ladders, ropes or scaffolds. She could occasionally reach overhead, can frequently perform gross handling and fine manipulation, including gripping, grasping, handling, fingering, feeling and keyboarding. The claimant could tolerate occasional exposure to vibrations but must avoid wet or slipping conditions and other workplace hazards such as unprotected heights and dangerous moving machinery. The claimant can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation level (SVP) of 2 or less, which are generally classified as unskilled. The claimant can perform jobs that would be considered "low stress" that would involve only occasional, simple decision-making and only occasional changes in the work duties and work settings. The claimant could have occasional interaction with coworkers and supervisors but would be limited to rare/incidental contact with customers or member to the general public.

*Admin. Tr.* at 976-977.   In making this determination, ALJ Tranguch "adopted and incorporated" ALJ Zack's "summary of the medical evidence," which ALJ Tranguch found "adequately summarized the medical evidence admitted to that point but not the conclusions reached in [ALJ Zack's] decision." *Id*. at 978.

11

At step four of the sequential-evaluation process, ALJ Tranguch found that Dantzler "has been unable to perform any past relevant work" since December 1, 2012, the alleged onset date. *Id.* at 980.

At step five of the sequential-evaluation process, ALJ Tranguch found that Dantzler changed age categories from "closely approaching advanced age" to "advanced age" on November 11, 2017. *Id.* at 981. ALJ Tranguch found that Dantzler has at least a high school education and can communicate in English. *Id.* ALJ Tranguch found that, prior to November 11, 2017, transferability of job skills was "not material to the determination of disability" because, under the Medical-Vocational Rules, Dantzler "is 'not disabled' whether or not [Dantzler] has transfer[r]able job skills." *Id.* ALJ Tranguch found further that jobs Dantzler could have performed existed in the national economy in significant numbers before Dantzler changed age categories on November 11, 2017, but that after Dantzler changed age categories, "no jobs [existed] in significant numbers in the national economy that [Dantzler] could perform." *Id.* at 981-982. In support of his conclusions, ALJ Tranguch relied on the testimony of a vocational expert. That expert testified that a person with Dantzler's RFC could, before reaching "advanced age," engage in the following three representative occupations:  routing clerk (DOT # 222.687-022); photocopy machine clerk (DOT # 207.685-014); and mail clerk (DOT # 222.587-038). *Id.* at 982.

12

ALJ Tranguch also found that Dantzler's substance abuse disorders were not a contributing factor material to the determination of disability. *Id.*

In sum, ALJ Tranguch concluded that Dantzler was not disabled from December 1, 2012, through November 11, 2017, which includes September 30, 2013, the date Dantzler was last insured. *Id.*  Thus, he denied Dantzler's claims for disability insurance benefits, *id.*, and denied Dantzler's claims for supplemental security income before November 11, 2017. *Id.*  ALJ Tranguch concluded, however, that Dantzler was disabled beginning November 11, 2017. *Id.*

**V. Discussion.**

Dantzler raises the following issues in her statement of errors.

1. The ALJ erroneously rejected the assessment of the examining psychologist [Dr. Brislin] which, if credited, would have compelled a finding of disability.

2. The ALJ failed to present a hypothetical question containing all of Plaintiff's credibly established limitations to the VE.

3. The ALJ's credibility evaluation of Plaintiff was improper.

*Doc. 23* at 4.  The second issue above is restated in the plaintiff's brief as:  "[T]he ALJ omitted from his hypothetical the mental functional limitations assessed by Dr. Breslin [sic], as set forth <u>supra</u>." *Id.* at 11.  Dantzler fails to raise any other omissions from the hypothetical submitted to the VE. *See id.* at 11-12.  Therefore, we will construe the second issue as arguing only that ALJ Tranguch improperly failed to

13

include the mental functional limitations assessed by Dr. Brislin in the hypothetical posed to the VE.

Toward the end of her brief (*Doc. 23*), Dantzler raises the following fourth issue:  "[T]he ALJ never mentioned Ms. Crosson's [Third Party Function] report, and gave no indication of the weight he assigned to it, if any. Moreover, the ALJ made no credibility finding regarding Ms. Crosson's statement, in violation of the law of this circuit." *Id.* at 13-14.

Although the first, third, and fourth issues are framed as challenges to ALJ Tranguch's RFC assessment, they are more accurately construed as challenges to the way ALJ Tranguch evaluated, and articulated his evaluation of, evidence in this case. Accordingly, Dantzler's brief is construed as raising the following issues:

    (1) Whether ALJ Tranguch properly evaluated Dr. Brislin's assessment;

    (2) Whether ALJ Tranguch improperly failed to include the mental functional limitations found by Dr. Brislin in the hypothetical posed to the Vocational Expert;

    (3) Whether ALJ Tranguch properly evaluated Dantzler's credibility; and

    (4) Whether ALJ Tranguch properly evaluated Ms. Crosson's Third Party Function Report.

We will address the last issue first.

**A. Whether ALJ Tranguch properly evaluated Ms. Crosson's Third Party Function Report.**

An "ALJ must [] consider and weigh all of the non-medical evidence before him." *Burnett*, 220 F.3d at 122 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983); *Cotter*, 642 F.2d at 707). When an ALJ rejects testimony, function reports, or medical opinions because they are not consistent with other evidence, the ALJ must address any other probative evidence, including nonmedical evidence, which might bolster the rejected statements.[6] *Id.* Evidence may not be ignored when it corroborates or duplicates other evidence. *Id.*

Here, ALJ Tranguch did not discuss Ms. Crosson's Third Party Function Report. *See Admin. Tr.* at 971-83. ALJ Tranguch stated: "The prior decision issued in this matter adequately summarized the medical evidence admitted to that point but not the conclusions reached in that decision. Therefore, the prior summary of the medical evidence is adopted and incorporated herein." *Admin Tr.* at 978. With regard to Ms. Crosson's Third Party Function Report, ALJ Zack stated only:

> Her sister completed a Function Report and stated that her weight gain has limited her standing, her diabetes makes her tired[,] and she spends a lot of time alone (Exhibit D-5E). Her sister states that her activities

---

[6] *Burnett*, 220 F.3d at 122 (citing *Van Horn*, 717 F.2d at 873) (internal quotation marks and citations omitted) (The Third Circuit has "set aside an ALJ's finding because he failed to explain why he rejected certain non-medical testimony." Where an "ALJ explained he rejected [a claimant's] testimony . . . because he determined it was not supported by the objective medical evidence" and "the ALJ made a credibility determination regarding [the claimant]", the ALJ must address the testimony of all witnesses who attempted "to bolster [the claimant's] credibility.").

vary from day to day. She does not have any problems with personal care activities, prepares her own meals[,] and does what she can as far as chores. She handles her own finances, goes out every day[,] and spends her day reading, watching television[,] and painting. She sometimes attends church and goes out to dinner or the movies once a week. Her sister states that she has a big problem getting along with family, friends, neighbors, or others and does not go out socially as of late. She can walk for half an hour and lift 30 pounds. She has been fired from jobs because of her mood swings and does not handle stress or changes in her routine. The split [sic] for her wrist was prescribed three years ago.

*Admin. Tr.* at 26.

Dantzler argues that Ms. Crosson's Third Party Function Report "corroborated the expert opinion of Dr. Brislin that Ms. Dantzler has marked limitations in her ability to interact with supervisors, coworkers[,] and the public." *Doc. 23* at 13.

In response, the Commissioner states:

Plaintiff highlights that Ms. Crosson "corroborated" the opinion of Dr. Brislin that Plaintiff has marked limitations in her ability to interact with supervisors, coworkers, and the public (*id.*). Any purported failure on the part of the ALJ to mention the report was harmless and would not affect the outcome of his decision, to the extent that it is merely corroborative and duplicative. *See Sanders*, 556 U.S. at 409.

But Ms. Crosson's statements also support some of the ALJ's findings – for instance, Ms. Crosson noted that Plaintiff does not have an impaired ability to care for herself; can prepare her own meals; she does some house and yard work; goes outside every day by herself and is capable of driving; does food/clothing/household goods shopping in stores; is able to handle money; has various hobbies and interests including reading, watching TV, and painting; and spends time with others once a week, including going out to dinner or to the movies, and sometimes goes to church (Tr. 223-26). She further noted that Plaintiff

can pay attention "pretty good," follows written instructions "moderately" well, does "okay" with following spoken instruction, and gets along "fair" with authority figures (Tr. 227-28). Thus, any error of not specifically mentioning this third-party function report is further harmless as the ALJ was free to weigh it and it, again, [] would not have changed the outcome of the decision. *See Koffel v. Colvin*, 2015 WL 3771161, at *6-7 (M.D. Pa. June 17, 2015) (court could reasonably discern that lay witness's testimony was rejected for same reason as plaintiff's); *Brandt v. Colvin*, 2014 WL 4793956, at *6 (M.D. Pa. Sept. 24, 2014) (same); *see also Butterfield v. Astrue*, 2011 WL 1740121, at *6 (E.D. Pa. May 5, 2011) (collecting cases).

To the extent that Plaintiff suggests that the ALJ must cite and explain every statement made by Plaintiff (and/or her sister)—she is also incorrect. An ALJ is not required to discuss every record in evidence. *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record"); *c.f., Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 162 (3d Cir. 2016) ("[C]herry-picking of unmentioned details from a voluminous record does not a viable claim make."); *Freeman v. Colvin*, No. 4:14-CV-01581, 2015 WL 3739077, at *7 (M.D. Pa. June 15, 2015) ("It is well established that the ALJ need not address every piece of evidence in the record.").

*Doc. 24* at 23-25.[7]

Thus, the Commissioner essentially argues that the omission of an explanation of the ALJ's analysis of Ms. Crosson's Third Party Function Report was not a harmful error because:

---

[7] We note that ALJ Tranguch adopted only "the prior summary of the medical evidence," *Admin. Tr.* at 978, and Ms. Crosson's Third Party Function Report is not medical evidence. But even if Ms. Crosson's report were included in the carry-over summary of the evidence, ALJ Zack merely summarized the evidence, and neither ALJ Zack nor ALJ Tranguch provided discussion of their evaluations of the report. *See Admin. Tr.* at 17-29, 971-83.

(1) the evidence in the function report merely corroborates the other evidence which tends to show disability;

(2) the function report contains evidence which could lead an ALJ to conclude Dantzler was not disabled; and

(3) the Commissioner was not required to address the function report because the function report is merely a "tidbit of evidence." *Id.* (quoting *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)).

In her first contention, that corroborative evidence may be disregarded, the Commissioner is mistaken. An ALJ must address all evidence which tends to corroborate rejected medical opinions. *Burnett*, 220 F.3d at 122. Here, Dantzler has alleged that Ms. Crosson's Third Party Function Report corroborates Dr. Brislin's medical opinions, *Doc. 23* at 13, and the Commissioner did not dispute the function report's corroborative nature. *Doc. 24* at 23-25.  ALJ Tranguch rejected Dr. Brislin's medical opinions, saying they were "of limited weight." *Admin. Tr.* at 979. Therefore, because the Third Party Function Report was corroborative of rejected medical opinions, ALJ Tranguch was obligated to discuss the way he evaluated the function report.

Second, the Commissioner points to evidence in Ms. Crosson's function report which may weigh against a finding disability. However, the burden of explaining the analysis of Ms. Crosson's Third Party Function Report rests with the ALJ. "Insofar as Defendant now provides analysis or evidentiary support lacking in the ALJ's Decision, Defendant cannot now do what the ALJ should have done. Thus,

the Court looks to the analysis contained in the ALJ's Decision to determine whether the relevant standards are satisfied." *Dantzler v. Saul*, No. 3:16-CV-2107, 2019 WL 5569466, at *2 (M.D. Pa. Oct. 28, 2019) (citing *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001); *Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir. 1979)). Here, they are not.

The Commissioner's third contention, that the Commissioner was not required to address the function report because the function report is merely a "tidbit of evidence," is not well taken. The Commissioner cites to three cases in support of this argument; however, none provide strong comparison or analogy for the case at hand. In the first cited case, the court found that an ALJ did not err in failing to discuss x-ray images when the ALJ discussed medical evidence including a treating physician's review of the images. *Hur*, 94 F. App'x at 133. In the second cited case, the court stated that an ALJ did not err by failing to include a doctor's specialization and number of years the doctor had treated the plaintiff. *Dellapolla*, 662 F. App'x at 162.  In the third cited case, the court held that an ALJ did not err in failing to discuss how the plaintiff's long work history was positively considered in the plaintiff's credibility determination. *Freeman*, 2015 WL 3739077, at *7. Each of these cases provide an example of what a mere "tidbit" of evidence might be; none of these cases finds an entire function report too small to require analysis. On the contrary, ALJs

must consider relevant third party function reports.[8] Therefore, Defendant's third

contention is not well taken.

Because the Commissioner's final decision lacks sufficient explanation of

ALJ Tranguch's analysis of the Third Party Function Report by Ms. Crosson, this

Court cannot determine whether substantial evidence supports ALJ Tranguch's RFC

assessment. Accordingly, the Commissioner's final decision will be remanded so

that the ALJ can more clearly explain how he arrived at his findings.

---

[8] *Melton v. Kijakazi*, No. CV 20-5307, 2022 WL 1227972, at *6 (E.D. Pa. Apr. 25, 2022) (remanding for two reasons, one of which was the ALJ's failure to accord any specific weight to a third party function report and stating that when "the claimant's friends and family members [] provide evidence (oral or written) that bears upon the claimant's case . . . . , the ALJ must explicitly determine the weight she will afford this evidence . . . . [especially when] it corroborated Plaintiff's testimony about her limitations . . . [F]ail[ure to] explicitly to accord any weight to the report of Plaintiff's mother . . . . constitutes legal error . . . . [and is] not harmless . . . ."); *Diaz v. Colvin*, No. 4:16-CV-00358, 2017 WL 1078229, at *18 (M.D. Pa. Mar. 22, 2017) (remanding because the ALJ failed to acknowledge a third party function report, among other reasons); *Henderson v. Berryhill*, No. CV 17-3481, 2019 WL 2166850, at *14 (E.D. Pa. Apr. 22, 2019), *report and recommendation adopted*, No. CV 17-3481, 2019 WL 2161646 (E.D. Pa. May 17, 2019) (ordering the ALJ to reconsider a third party function report on remand by "specifically identify[ing] the statements and the evidence with which they conflict" "rather than [merely] indicating that statements regarding the intensity, duration, and limiting effects of Plaintiff's symptoms are 'not entirely consistent with the evidence'"); *Buckler v. Astrue*, No. 1:07-CV-1414, 2008 WL 2486133, at *7 (M.D. Pa. June 17, 2008) (remanding because the ALJ failed to address statements in a third party function report, among other reasons); *Martinez v. Berryhill*, 747 F. App'x 634, 635 (9th Cir. 2019) (remanding for two reasons, including the ALJ's failure to discuss a third party function report); *David v. Kijakazi*, No. 20-36035, 2021 WL 6101257, at *2 (9th Cir. Dec. 21, 2021) (ordering an ALJ to consider a third party function report on remand).

## VI. Conclusion.

For the foregoing reasons, we will vacate the Commissioner's decision and remand the case to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

Because we conclude that the Commissioner's decision must be vacated and the case remanded based on the ALJ's failure to adequately analyze, or articulate the reasons for finding unpersuasive, the Third Party Function Report by Ms. Crosson, we will not address Dantzler's remaining claims of error.  "Plaintiff's additional claims of error may be remedied through the case's treatment on remand." *Brown v. Saul*, No. CV 3:18-1619, 2020 WL 6731732, at *7 (M.D. Pa. Oct. 23, 2020), report and recommendation adopted, 2020 WL 6729164, at *1 (M.D. Pa. Nov. 16, 2020). "A remand may produce different results on these claims, making discussion of them moot." *Id*.

An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge